UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| TERRY TRUDEAU, )<br>)<br>    *Plaintiff* )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>**Commissioner of Social Security,** )<br>)<br>    *Defendant* ) | Civil No. 07-218-P-H |

### REPORT AND RECOMMENDED DECISION[1]

The plaintiff in this Social Security Disability ("SSD") appeal contends that the administrative law judge applied an incorrect standard to his evaluation of her alleged mental impairment at Step 2 of the commissioner's sequential evaluation process, that his failure to consult a medical expert regarding the onset date of her disability requires remand, and that he improperly evaluated her subjective complaints of pain. I recommend that the commissioner's decision be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520, *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff was insured for benefits only through September 30, 2004, Finding 1, Record at 24; that, prior to the date last insured, the

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on October 17, 2008, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

plaintiff suffered from chronic obstructive pulmonary disease, myofascial strain, and a history of shoulder injury, impairments that were severe but did not meet or medically equal the criteria of any impairments listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404 (the "Listings"), Findings 2-3, *id*.; that the plaintiff's allegations regarding her limitations were not totally credible, Finding 4, *id*.; that, prior to the date last insured, the plaintiff retained the residual functional capacity to perform light exertional work, to climb stairs and ramps frequently, to occasionally climb ladders, ropes, and scaffolds, to balance, kneel, and crawl frequently, to stoop and crouch occasionally and not to perform frequent overhead reaching with the right shoulder, Finding 5, *id*.; that the plaintiff's medically determinable impairments did not prevent her from performing her past relevant work from the alleged onset date to the date last insured, Finding 7, *id*.; and that she accordingly was not under a disability, as that term is defined in the Social Security Act, at any time through September 30, 2004, the date last insured, Finding 8, *id*. at 25. The Appeals Council declined to review the decision, *id*. at 5-7, making it the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 647 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge in this case reached Step 4 of the sequential process, at which stage the claimant bears the burden of proof of demonstrating inability to return to past

relevant work. 20 C.F.R. § 404.1520(e); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step the commissioner must make findings of the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 404.1520(e); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

The plaintiff's arguments also implicate Step 2 of the sequential process. Although a claimant bears the burden of proof at this step, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.,* 795 F.2d 1118, 1123 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85-28).

## Discussion

### A.  Step 2 Mental Impairment

The plaintiff first contends that the administrative law judge "fail[ed] to apply the severity standard, as set forth by the First Circuit," in addressing her alleged mental impairment. Plaintiff's Itemized Statement of Errors ("Itemized Statement") (Docket No. 9) at 11. Her first argument is that this court should apply the requirement imposed by the Fifth Circuit Court of Appeals for Step 2 Social Security cases, that if the administrative law judge does not set forth in the opinion an explicit statement of the legal standard applicable at Step 2 as "clarified" by the Fifth Circuit, that case must be remanded by the district court to the commissioner. *See Loza v.*

*Apfel*, 219 F.3d 378, 391-92 (5th Cir. 2000).  In this case, the administrative law judge recited the definition of "severe" that is provided by 20 C.F.R. § 404.1520: An impairment is severe if it significantly limits an individual's physical or mental ability to do basic work activities.  Record at 19.  The First Circuit's somewhat different definition of the term is recited *supra*.  This court has uniformly applied the First Circuit's definition, but that court has never held that any Social Security benefits decision that involves a determination of severity must be remanded if that definition is not expressly set out in the opinion or if *MacDonald*, the case that established that definition, is not cited for that purpose.  In the absence of such an instruction from the First Circuit, I decline to impose this formal requirement on the commissioner and his administrative law judges.  It is the substance of an administrative law judge's opinion that will govern its review by this court.

The plaintiff next asserts that "Dr. [Cathra] Chappelle's records, coupled with the other evidence of record documenting [the plaintiff's] multiple admissions for suicide attempts as well as the comprehensive report from Dr. [Frank] Luongo, a consulting psychologist, document that [the plaintiff's] depression and anxiety were more than minimal impairments during the relevant period."  Itemized Statement at 13.   As to the plaintiff's alleged mental impairments, the administrative law judge wrote:

> With respect to the medical evidence concerning mental impairments during the period at issue, the claimant was seen in the emergency room on June 11, 2003 after drinking a liter of wine and ingesting 20 Klonopin tablets. . . .  The diagnoses were depression not otherwise specified (Ex. 5F, pp. 53-58).  The claimant was seen in the emergency room on December 16, 2003 intoxicated.  The diagnosis was alcohol abuse (Ex. 5F, p. 27).  Debra Walton, a nurse specialist in mental health, submitted a statement on March 25, 2005 stating that she had treated the claimant form March 8, 2003 to the present for chronic depression, anxiety, and post-traumatic stress disorder.  She did not submit her treatment records.  (Exh. 10F).  Dr. Cathra Chap[p]elle, the claimant's primary care

4

>physician, treated the claimant for anxiety with Xanax from the alleged onset date to the date last insured (Ex. 13F, pp. 11-26).
>
>* * *
>
>During the period before the date last insured the claimant was treated intermittently for anxiety and alcohol related problems. There is a mention of counseling treatment by a nurse during this period, but we have no treatment records to confirm this. Dr. Chappelle's progress notes show insufficient evidence to find that the claimant had work related limitations from anxiety, substance abuse or other mental impairments. The claimant did not have "severe" mental impairments during the period from the alleged onset date to the date last insured.

Record at 20-21.

The plaintiff first remarks that "to the extent the ALJ felt that the progress notes from Nurse Walton were needed to make an informed decision, he had a duty to request these records. *See* 20 C.F.R. § 404.1512(e)." Itemized Statement at 13. That regulation requires the administrative law judge to contact a treating professional "[w]hen the evidence we receive" from that professional "is inadequate for us to determine whether you are disabled." The administrative law judge should seek

>additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

20 C.F.R. § 1512(e)(1). Here, the plaintiff does not suggest, and there is no indication, that the administrative law judge found Walton's report to contain a conflict or ambiguity or not to appear to be based on acceptable techniques. The plaintiff merely says that the administrative law judge was required to contact Walton "to the extent [he] felt that progress notes from Nurse Walton were needed to make an informed decision." That is not the standard set out in section 1512(e), which directs the administrative law judge to contact Walton if her report "does not contain all the necessary information." Bearing in mind that the plaintiff, who was represented

5

by counsel throughout, Record at 40, 53, 462, bears the burden of proof at Step 2, the administrative law judge's observation that Walton's treatment records were not submitted cannot be equated to a statement that he found her report to lack some "necessary" information. It is certainly possible that her treatment records might have bolstered the opinions expressed in her report, but it is also possible that they would not. On the showing made, there was no need for the administrative law judge to contact Walton.

The plaintiff goes on to recite the evidence she contends the administrative judge ignored. Her alleged date of onset is March 30, 2002, *id.* at 19, but she begins by listing an attempt at suicide in February 2002. Itemized Statement at 14. In the absence of any indication by the plaintiff that there is medical evidence that makes this pre-onset event relevant, I see no reason for the administrative law judge to have considered it. The plaintiff next mentions "depression and suicide thoughts on August 8-9, 2002, and . . . another suicide attempt later that month." *Id*. This incident is not mentioned by the administrative law judge, but the hospital record cited by the plaintiff makes clear that the physician who treated her in the emergency room on August 23, 2002, attributed the incident to alcohol intoxication: Below the diagnosis of depression and suicide attempt the physician wrote "Discharge to husband to be taken directly to St. Mary's for detox t[reatment]." Record at 244. This medical evidence appears to me to prevent an adjudicator from considering the event as medical evidence of a severe mental impairment existing independently from substance abuse at the relevant time, as Social Security law and regulations now require.

The next record cited by the plaintiff is characterized as "a third suicide attempt on June 11-12, 2003." Itemized Statement at 14. Again, the hospital records indicate a diagnosis of opiate dependence and, as a treatment plan, "transfer to St. Mary's/ Lewiston for opiate

6

detoxification & rehabilitation." Record at 209. Characterized by the plaintiff as "her fourth suicide attempt on December 16-17, 2003," Itemized Statement at 14, the cited hospital record diagnoses "drug overdose" and notes that the plaintiff will contact her primary care provider in the morning "to gain access to rehab for Benzos" and "for re-evaluation and rehab placement." Record at 197. Again, the administrative law judge must consider a claimant's alleged impairment independent of abuse of alcohol or drugs. 20 C.F.R. § 404.1535(a). The administrative law judge's failure to mention these incidents was at most harmless error under the circumstances.[2]

The plaintiff next refers to Dr. Chappelle's records, which she says "document her anxiety and panic attacks for which she was prescribed Xanax" during the relevant period. Itemized Statement at 14. The administrative law judge noted that Dr. Chappelle treated the plaintiff with Xanax for anxiety from the alleged onset date to the date last insured, Record at 20, and concluded that her "progress notes show insufficient evidence to find that the claimant had work related limitations from anxiety, substance abuse or other mental impairments." *Id.* at 21. Several of the pages of the record cited by the plaintiff on this point are dated after the date last insured (pages 373, 374, 377-78); one reports that the plaintiff's use of Xanax exceeded what had been prescribed and that she was getting Xanax "off the street" and wanted referral to St. Mary's for rehab (page 386); some others report that the plaintiff's anxiety was improving or stable or that Dr. Chappelle suspected abuse of the Xanax (pages 387, 389, 391). Only the entries at pages 395-96 of the record, where Xanax was first prescribed, on a trial basis, on

---

[2] At oral argument, counsel for the plaintiff contented that the administrative law judge should have made a finding at Step 2 without consideration of the plaintiff's use or misuse of drugs or alcohol. Specifically, he asserted that "alcohol is not a factor until a severe impairment is found." I do not read 20 C.F.R. § 404.1535 so narrowly. In any event, even if the administrative law judge had delayed consideration of the plaintiff's drug addiction or alcoholism until a later step in the sequential evaluation process, the regulation requires that the result would have been the same. That is the definition of a harmless error.

7

January 24, 2003, and pages 393-94, where on March 7, 2003, the Xanax prescription was refilled, squarely support the plaintiff's position, and even then there is no indication of any impact of the anxiety on the plaintiff's ability to work.  In fact, the January 24, 2003, record reports in the present tense that the plaintiff "cleans homes for a living."  *Id*. at 395.  The plaintiff must show not only that a mental impairment existed before the date last insured but also that it was severe, under the applicable definition of that term.  The cited records do not provide any evidence of severity, and in that regard, the administrative law judge's evaluation is not erroneous.

The plaintiff moves on to Walton's report.  Noting that Walton provided counseling to her from April 8, 2003 through 2005, the plaintiff contends that her diagnoses, standing alone, "support[] a finding that her depression and anxiety were more than minimal impairments." Itemized Statement at 14.[3]  Those diagnoses, made on March 25, 2005, after the date last insured, are "Major Depressive Disorder, chronic, moderately severe," "Generalized Anxiety Disorder," "Panic Disorder, without Agoraphobia," and "Post Traumatic Stress Disorder related to childhood issues."  Record at 348.  Without more, I cannot conclude that the administrative law judge's treatment of this report was fatally insufficient.

Finally, the plaintiff devotes extensive discussion to the report of Frank Luongo, Ph.D., a psychologist who saw the plaintiff after the date last insured at the request of her attorney.  With respect to Dr. Luongo, the administrative law judge said:

> . . . Dr. Frank Luongo, a psychologist, saw the claimant on three occasions in November and December 2005 at the request of her attorney, and opined that she would not be able to work based on panic disorder, depression, and polysubstance abuse (Ex. 18F and 19F).  Such a conclusion is not supported by the daily activities she related to Dr.

---

[3] The plaintiff also asserts that Walton "described" certain "associated symptoms," Itemized Statement at 14-15, but, with the exception of "some difficulty concentrating," the listed "symptoms" are preceded by the words "client reports," Record at 347, making them unacceptable as findings or opinions of a treating source.

8

> Luongo, and is not consistent with the medical evidence during the time before the date last insured. Dr. Luongo had not seen the claimant as a treating provider, but as a consulting examiner that did not see the claimant for over a year after the date last insured.

Record at 22. He also stated that he "concur[red] with the analyses of the DDS psychological experts in Exhibit 12F and 15F" and "that the medical evidence lacked . . . a basis for determining functional limitations from mental and substance abused impairments prior to the date last insured." *Id*. at 23. When asked specifically by the plaintiff's attorney, Dr. Luongo opined that "her disabled status and restrictions do go back to 03/30/02." *Id*. at 458. However, he also stated that it was not possible for him "to formulate a meaningful opinion" as to whether the absence of alcohol abuse would have affected her disability at the relevant time. *Id*. That means that his retrospective opinion cannot form the basis of the conclusion the plaintiff seeks. Whether or not the administrative law judge's stated reasons for discounting Dr. Luongo's retrospective opinion were accurate, this fundamental problem with that opinion deprives it of value under governing Social Security law and regulations.

In any event, and contrary to the plaintiff's argument, Itemized Statement at 16, the administrative law judge was not required to give more weight to Dr. Luongo's opinion than to the opinions of the two state-agency psychologists who viewed the same records from the relevant period as did Dr. Luongo.[4] The administrative law judge may rely on the opinions of state-agency reviewing physicians or psychologists instead of the differing opinion of a similar professional who examined, but did not treat, the claimant, so long as those opinions are consistent with other medical evidence in the record. *Corriveau v. Barnhart*, 2005 WL 1923520 (D. Me. Aug. 9, 2005), at *3; *see also Berrios Lopez v, Secretary of Health & Human Servs*., 951

---

[4] The plaintiff asserts without citation to authority that "Dr. Luongo is the *only* physician who had the benefit of reviewing every single medical record in this case and rendered an opinion regarding onset." Itemized Statement at 20 (emphasis in original). Dr. Luongo is a psychologist, not a physician, and my own review of the record does not support this sweeping assertion.

9

F.2d 427, 431 (1st Cir. 1991). Both of the state-agency psychologist-reviewers in this case found that, while there was evidence of depression and substance abuse during the relevant period, there was insufficient evidence to determine the resulting functional limitations. Record at 369, 428. The plaintiff does not contend that the state-agency psychologist-reviewer's opinions were inconsistent with all other medical evidence in the record, and, to the extent that her presentation may reasonably be construed to contend *sub silentio* that this was the case, I have addressed her arguments in connection with the record evidence of suicide attempts and Dr. Luongo's reports.

The plaintiff is not entitled to remand on the basis of her first claim.

### B. Step 2 Medical Expert

The plaintiff next contends that the administrative law judge committed a reversible error by failing to call a medical expert to testify at hearing about the onset date of her alleged mental disability.[5] She contends that Social Security Ruling 83-20 required the administrative law judge in this case to consult a medical expert. Itemized Statement at 18. She correctly cites case law from other jurisdictions requiring an administrative law judge to do so when the evidence regarding onset date is ambiguous, *id*. at 18-19, but does not specify what evidence is ambiguous in this case. In *May v. Social Security Admin. Comm'r*, 125 F.3d 841 (table), 1997 WL 616196 (1st Cir. Oct. 7, 1997), an unpublished decision of the First Circuit cited by the plaintiff, *id*. at 19, the First Circuit found that the retrospective opinion of a treating source, which Dr. Luongo was not, was entitled to "significant weight" with respect to the date of onset when it was not inconsistent with the record as a whole, and the claimant was thus entitled to remand so that the administrative law judge could consult a medical expert, as the evidence "was at least

---

[5] It is not entirely clear from the plaintiff's itemized statement whether she means this argument to apply to the physical impairments found by the administrative law judge to exist at the relevant time, Record at 24, as well as to the mental impairment that he did not find to be severe at the relevant time. Counsel for the plaintiff clarified at oral argument that the argument was meant to apply only to the mental impairment. He also conceded that applicable regulations do not require an administrative law judge to consult a medical expert.

10

ambiguous" at Step 2. *Id.* at *1-2. The question of the role of substance abuse in the retroactive opinion regarding the date of onset would not have arisen in that case, which was decided well before Congress made substance abuse an essential consideration for any question of disability under Social Security law. Dr. Luongo's refusal to address that issue means that his opinion could not be considered by the administrative law judge and, accordingly, there was no ambiguity in the record about the date of onset. *See generally MacFarlane v. Astrue*, 2008 WL 660225 (D. Me. Mar. 5, 2008) at *4. Nothing in *Lawrence v. Massanari*, 2001 WL 915250 (D. Me. Aug. 15, 2001), or *Kelly v. Astrue*, 2007 WL 2021923 (D. Me. July 11, 2007), the two recommended decisions of this court cited by the plaintiff, Itemized Statement at 19, requires a different conclusion in this case.

The plaintiff is not entitled to remand on this basis.

### C. Step 5 Credibility

Finally, the plaintiff asserts that the administrative law judge failed to comply with 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p in evaluating her complaints of pain. In her itemized statement, she does not indicate what those complaints were or where they might be found in the record. I cannot determine, in the absence of any indication of the substance of the testimony that the plaintiff contends was wrongly discounted, whether any error that might have been made by the administrative law judge was harmless. A response that "everything the plaintiff said" was wrongly deemed "not totally credible," Record at 24, is too general; it is not the role of the court to search through the transcript of the hearing to find some portion of the plaintiff's testimony that might conceivably change the result of this case and then to apply the cited regulation, ruling, and *Avery v. Secretary of Health & Human Servs.*, 797 F.2d 19 (1st Cir. 1986), to each such portion. At oral argument, counsel for the plaintiff argued only that the

administrative law judge had not considered all of the *Avery* factors in his discussion of the plaintiff's credibility.

It is not necessary that an administrative law judge discuss each of the factors mentioned in *Avery*. *Braley v. Barnhart*, 2005 WL 1353371 (D. Me. June 7, 2005), at *5-*6. The administrative law judge's discussion of the plaintiff's credibility in this case, Record at 21-23, is sufficient. *See generally Reynolds v. Astrue*, 2007 WL 3023573 (D. Me. Oct. 12, 2007), at *6

### III. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 12th day of November, 2008.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge